IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The Estate of Dora Elizabeth B. Hanna, by and through her Personal Representative, King C. Hanna, Jr. and on behalf of a Class of Individuals Similarly Situated,<br><br>    Plaintiffs,<br><br>                v.<br><br>Agape Senior, LLC; Agape Harbison, Inc.; Agape Lexington, Inc.; Agape Assisted Living, Inc.; Agape at Kathwood, Inc.; Carolina Community Hospice, Inc.; Agape Senior Primary Care, Inc.; Agape Management Services, Inc.; Agape West Columbia; Agape Senior Conway; Scott Middleton and his agents, assigns and representatives; Jackson and Coker Locum Tenens, LLC d/b/a Jackson Coker,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>                v.<br>Ernest Addo,<br><br>    Third-Party Defendant. | CIVIL ACTION NO. 3:12-cv-02872-JFA<br><br>**ORDER** |

### I.    INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Remand (ECF No. 113), Defendants' Motion to Realign Ernest Addo (ECF No. 123), and Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Complaint. (ECF No. 126).

## II.    BACKGROUND FACTS

This case arises out of purported medical treatment rendered to patients of Agape[1] by Ernest Addo ("Addo"), an unlicensed physician who assumed the identity of Arthur Kennedy, a duly licensed South Carolina physician. Specifically, this action was initiated to pursue the claims of all patients who received care from Addo during the time he was associated with Agape. The original complaint was filed in state court in Richland County, South Carolina and alleged causes of action for negligent referral against Jackson & Coker and negligent hiring, negligence per se, unjust enrichment, negligent retention, negligent supervision, negligent entrustment, vicarious liability, and strict tort liability (declaratory judgment) against Agape. On October 4, 2012, this case was removed by the Agape defendants from state court pursuant to the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d).[2] Shortly after removal and as a result of the parties' request, the Court stayed this case for an extended period of time while the underlying declaratory judgment action was litigated to determine contested insurance coverage issues. The stay was eventually lifted on November 5, 2014. Thereafter, the Plaintiffs dismissed defendant Jackson & Coker and filed a Motion to Remand. That motion is the issue presently before the Court.

## III.   LEGAL STANDARD

A district court's review of federal jurisdiction assessing whether an action was properly removed must be evaluated based upon the time of removal. Consequently, post-removal events cannot serve to strip the federal court of otherwise proper jurisdiction. *Groupo Dataflux v. Atlas*

---

[1] The Court's reference to "Agape" throughout this Order refers to all Agape entities named as defendants in this case and Scott Middleton.

[2] The Court has not certified a class in this action. However, the Court need not make a determination regarding the appropriateness of class certification in order to analyze the applicability of CAFA's jurisdictional provisions. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). *See also* 28 U.S.C. § 1332(d)(1)(D) ("the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action").

*Global Grp., L.P.*, 541 U.S. 567, 569-70 (2004); *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991).  This same premise also holds true for actions removed pursuant to CAFA. *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, 768 F.3d 425, 427 (5th Cir. 2014) ("It is well-established that the time-of-removal rule prevents post-removal actions from destroying jurisdiction that attached in federal court under CAFA."); *State of Louisiana v. American National Property & Casualty Co.*, 746 F.3d 633, 639-40 (5th Cir. 2014) (describing "overwhelming and unanimous authority" among the circuit courts of the position that post-removal events do not oust CAFA jurisdiction); *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 627 (D.S.C. 2006) (post-removal events . . . do not deprive a federal court of diversity jurisdiction) (citing *Thompson v. Victoria Fire & Casualty Co.*, 32 F. Supp. 2d 847, 849 (D.S.C. 1999)).

"While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only allege federal jurisdiction with a short plain statement -- just as federal jurisdiction is pleaded in a complaint -- when removal is challenged, the removing party bears the burden of demonstrating that removal jurisdiction is proper." *Ellenburg v. Spartan Morots Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).  However, once the jurisdictional requirements of CAFA are met, the burden shifts to the party seeking remand to establish that an exception exists.  *Eakins v. Pella Corp.*, 455 F. Supp. 2d 450, 452 (E.D.N.C. 2006) (holding that "the plaintiff bears the burden of proving that the local controversy exception warrants remand to state court").

**IV.    DISCUSSION**

*A.  Class Action Fairness Act*

CAFA was enacted in 2005 to address abuses of the class action device by amending 28 U.S.C. § 1332, the federal diversity statute. In doing so, the diversity statute was modified to allow for federal jurisdiction over class actions where only minimal diversity exists. Congress

3

implemented CAFA to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2).  In general, removal pursuant to CAFA is permissible if the removing party can establish: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2); (2) any member of a class of plaintiffs is a citizen of a state different from any defendant, § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, § 1332(d)(5)(B).

In noting CAFA's impact, the Senate Judiciary Committee stated, "[o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions . . ." S. Rep. No. 109-14 at 42 (2005).  The Fourth Circuit has also recognized that CAFA not only "amended, among other things, the concept of diversity jurisdiction for class actions to require only minimal diversity," but it also "liberalized the requirements for removing class actions to federal courts." *Johnson v. Advance America*, 549 F.3d 932, 935 (4th Cir. 2008).  However, despite the broad allowance of federal jurisdiction afforded by CAFA, the statue also has exceptions that, when applicable, make the exercise of jurisdiction by a federal court improper.

In the case currently before the Court, there does not appear to be any dispute between the parties regarding CAFA's basic jurisdictional requirements.  Instead, the basis of Plaintiffs' Motion to Remand rests on what is known as the local controversy exception to CAFA.  28 U.S.C. § 1332(d)(4).

### B.  *Local Controversy Exception*

The local controversy exception applies to removed cases where: (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the state where the suit was filed originally; (2) at least one defendant (a) is a defendant from whom members of the plaintiff

4

class are seeking "significant relief," (b) is a defendant whose conduct "forms a significant basis" for the proposed plaintiff class's claims, and (c) is a citizen of the state in which the action originally was filed; (3) the principal injuries stemming from the conduct alleged in the complaint occurred in the state where the action was filed originally; and (4) in the three years before the filing of the class action complaint, no other similar class action was filed against any of the defendants on behalf of the same or other class. 28 U.S.C. § 1332(d)(4)(A).  The application of this exception serves to divest the federal court of jurisdiction, making remand to state court appropriate.

Further review of CAFA's legislative history reveals that the purpose of the local controversy exception is to permit class actions with a truly local focus to remain in state court. *See* S. Rep. No. 109–14, at 38 (2005) (stating that a federal court should apply this exception to a case identified as "a truly local controversy -- a controversy that uniquely affects a particular locality to the exclusion of all others").  Therefore, a "court's analysis for jurisdictional purposes should focus on whether the case is a truly local controversy warranting remand or whether it is an interstate class action . . .  involv[ing] more people, more money, and more interstate commerce that Congress intended to place in federal court." *Quicken Loans, Inc. v. Alig*, 737 F.3d 960, 965 (4th Cir. 2013) (internal quotation marks omitted).

Accordingly, CAFA was enacted,

> to prevent States from keeping cases of national importance out of Federal court and making judgments that impose their view of the law on other States and bind the rights of the residents of those states.  It thus assures that federal courts decide interstate cases of national importance. But CAFA is also sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters.

*Id.* at 966 (citing *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)).

5

Based on the issues briefed by the parties and the Court's own evaluation, whether the local controversy exception properly applies in this case primarily turns on the second factor. Namely, whether "significant relief" is sought from defendant Agape and whether Agape's conduct forms a "significant basis" for the claims made.[3]

At the outset, the Court notes that "significant relief" and "significant basis" under CAFA have not been thoroughly defined by the Fourth Circuit. Instead, like many other courts, the Fourth Circuit has looked to the Senate Report for guidance in parsing out the application of these terms under the local controversy exception. The Senate Committee Report states in pertinent part,

> [T]he Committee intends that that local defendant must be a primary focus of the plaintiffs' claims – not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms significant basis for the claims asserted by the class.

S. Rep. No. 109-14 at 40 (2005). These statements reveal an "intention that the 'significant relief' and 'significant basis' under the second prong[] define truly local controversies." *Eakins*, 455 F. Supp. 2d at 452. Therefore, this Court is tasked with determining whether this case constitutes a local controversy, as contemplated by CAFA.

      i.      *"Significant Relief"*

While the Fourth Circuit has not adopted a test for determining when significant relief is sought, the Eleventh Circuit has held that "a class seeks 'significant relief' against a defendant when the relief sought against the defendant is a significant portion of the entire relief sought." *Evans v. Walter Indus.,* 449 F.3d 1159, 1167 (11th Cir. 2006) (citation omitted). Such an

---

[3] The complaint alleges the Agape entities are incorporated and do business in South Carolina and that Scott Middleton is a citizen of South Carolina. (ECF No. 1-1). Therefore, this analysis is conducted only as to Agape, the non-diverse defendants. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).

6

analysis requires not only an "assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Id.* (citation omitted).

Agape has pointed out, since post-removal events cannot be considered, the Court must look to the original complaint filed in state court in conducting its analysis because this was the complaint in operation at the time of removal. Agape maintains that the complaint, in the absence of other evidence, offers no basis for concluding that the relief sought from it is "significant" in relation to that sought from Jackson & Coker, the diverse defendant.[4] However, a review of the requested relief contained in Plaintiffs' complaint shows otherwise.

Plaintiffs' prayer for relief delineates with specificity the damages sought in this case. These requested damages include a reasonable amount of actual damages and an exemplary amount of punitive damages. The Court agrees that these damages, as alleged, may be sought from either defendant (or both) because the complaint, as written, does not differentiate between the sums sought from Agape and those sought from Jackson & Coker. However, Plaintiffs' prayer for relief also requests disgorgement of all improper collections from the Plaintiffs' class or Plaintiffs' class families and a declaratory judgment as to South Carolina law regarding strict liability for unreasonably dangerous activities. Review of the complaint as a whole reveals that these damages are sought exclusively from Agape.

The original complaint sets forth nine separate causes of action. However, of those nine, the only cause of action asserted against Jackson & Coker is for negligent referral of Addo to Agape.[5] Conversely, the complaint alleges numerous causes of action against Agape, including,

---

[4] The complaint alleges that defendant Jackson & Coker is incorporated in the state of Georgia and regularly does business in South Carolina. (ECF No. 1-1).

[5] Plaintiffs assert Jackson & Coker was negligent in its credentialing review and background checks of Addo in failing to conduct a thorough in-person interview, failing to match Addo's facial image with that of the real Dr. Kennedy, failing to

7

unjust enrichment and strict tort liability (declaratory judgment).[6] A cursory inspection of Plaintiffs' cause of action for unjust enrichment shows that Agape is alleged to have received payments from the decedent and Plaintiffs' Class that were unjustified because no physician services were actually provided. Plaintiffs specifically state that the decent and Plaintiffs' Class seek disgorgement from Agape. Similar allegations against Jackson & Coker are notably absent from Plaintiffs' complaint.

Moreover, Plaintiffs' cause of action for declaratory judgment is only alleged as to Agape. Plaintiffs contend Agape engaged in an abnormally dangerous activity (i.e. the treatment of patients by an unlicensed and untrained imposter-physician). Plaintiffs request in their complaint that the Court construe South Carolina law to include Agape's actions as an abnormally dangerous activity. Once again, such allegations against Jackson & Coker are not present. Further, to the extent "significant relief" also includes an assessment of how many members of the class were harmed by the defendant's actions, the allegations levied against Agape in the complaint declare that all class members were allegedly harmed by Agape's actions.

Agape also argues that significant relief is not sought from it due to the allegations of vicarious liability, which make it a secondary defendant instead of a primary defendant. Agape directs the Court to an unpublished opinion out of the Western District of North Carolina that discusses this issue, stating, "Courts that have addressed the issues of primary and secondary defendants in the context of CAFA have defined the term primary defendants as those parties that are directly liable to plaintiffs and secondary defendants as parties joined under theories of

---

compare Addo's fingerprints with those on file at the South Carolina Board of Medical Examiners, failing to conduct any testing of his medical knowledge, and failing to determine the true whereabouts of the real Dr. Arthur Kennedy. (ECF No. 1-1).

[6] Plaintiffs have also alleged causes of action for negligent hiring, negligence per se, negligent retention, negligent supervision, negligent entrustment, and vicarious liability.

vicarious liability or for purposes of contribution or indemnification." *Laws v. Priority Tr. Servs. of N.C., L.L.C.*, No. 3:08-CV-103, 2008 WL 3539512, at *1 (W.D.N.C. Aug. 11, 2008) (internal quotation marks omitted).  Under this premise, Agape maintains that the relief sought from it is not significant because any relief sought by the Plaintiffs against Agape for the acts of Addo are attributable only to Addo.

However, even if the Court were to view the vicarious liability cause of action on a primary defendant versus secondary defendant basis, such a construction still does not account for all of the other causes of action alleged against Agape for *its own* negligence. Of the causes of action asserted against Agape, an overwhelming majority -- all but one -- seek to hold Agape liable for actions it took, independent of those taken by Addo.  Accordingly, the Court is not persuaded that Agape is merely a secondary defendant from whom significant relief is not sought.

As such, the Court finds that the relief sought from Agape is significant in comparison to that sought by Jackson & Coker.  Plaintiffs have specifically requested particularized relief from Agape that is not demanded from Jackson & Coker, and the causes of action alleged against Agape sound in negligence for Agape's own actions. Therefore, the "significant relief" prong is satisfied.

      *ii.*     *"Significant Basis"*

In light of the lack of constructive guidance from the Fourth Circuit regarding a definitive test for assessing "significant basis," the Court must again look to other jurisdictions for guidance.  The Third Circuit has held that the "significant basis" component of the local controversy exception requires that there be "at least one local defendant whose alleged conduct forms a significant basis for all the claims asserted in the action." *Kaufman v. Allstate New*

9

*Jersey Ins. Co.,* 561 F.3d 144, 155 (3d Cir. 2009).   In application, this means, "[i]n relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the defendants." *Id.* at 156.  Therefore, "the local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the Defendants." *Id.* at 157 (emphasis in original).

The Third Circuit further provided a set of factors that may inform a district court's comparison, including: (1) the relative importance of each of the claims to the action; (2) the nature of the claims and issues raised against the local defendant; (3) the nature of the claims and issues raised against all defendants; (4) the number of claims that rely on the local defendant's alleged conduct; (5) the number of claims asserted; (6) the identity of the defendants; (7) whether the defendants are related; (8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and (9) the approximate number of members in the putative classes. *Id.* at 157 n. 13.  The Court does not believe than an exhaustive review of every factor formulated by the Third Circuit is necessary in order to ascertain whether Agape's conduct constitutes a significant basis for the claims asserted in the complaint.  The Court finds factors (1), (4), (5), and (7) most instructive in this case.[7]

### a.  *Relative Importance of Each Claim to the Action*

It is clear that the claims alleged against Agape are important to this action.  While Jackson & Cocker is alleged to have negligently referred Addo to Agape, the claims asserted against Agape are more expansive and relate to direct contact Agape made with the Plaintiffs.

---

[7] The Court notes that issues (2) and (3) have already been addressed, *supra.* Issues (8) and (9) are not readily ascertainable because a putative class has not been established.  However, based on the allegations of the complaint, it appears that most, if not all, members of the putative class would be asserting claims that rely on the local defendant's alleged conduct.

Plaintiffs aver Agape actually allowed Addo to treat patients, which resulted in harm to those individuals. Even without the cause of action asserted against Jackson & Coker, substantial claims against Agape would still remain.

### b. *Number of Claims That Rely on Local Defendants' Conduct*

All of the claims alleged, save for the claim asserted against Jackson & Coker, rely on the alleged conduct of Agape. As noted, *supra*, Agape has been sued based on its own alleged negligent conduct. Plaintiffs also seek to hold Agape liable for the acts of its employee. Therefore, nearly all the claims rely on the local defendants' alleged conduct.

### c. *Number of Claims Asserted*

As stated previously, a numerical comparison of the claims against each defendant reveals that only one cause of action, negligent referral, has been asserted against Jackson & Coker. However, all other eight causes of action have been asserted against Agape. It is evident that the majority of claims asserted in this action have been lodged against Agape.

### d. *Whether the Defendants are Related*

The local defendants in this case are related to one another. All of the Agape defendants constitute the entities of Agape and its owner and Chief Executive Officer, Scott Middleton. Plaintiffs allege that the Agape entities are subsidiary, sister, and affiliated corporations of Agape Senior, LLC. (ECF No. 1-1). As such, all of the local defendants are related to one another, and comprise the vast majority of all defendants in this case.

The Court finds there is ample evidence to suggest that Agape's conduct forms a significant basis for the claims asserted in this case. Therefore, the "significant basis" prong is satisfied, and the Court finds that this case constitutes a local controversy under CAFA.

11

## V. CONCLUSION

Based on the record before the Court, the briefs filed by the parties, and the arguments of counsel, the Court hereby **GRANTS** Plaintiffs' Motion to Remand. In light of the Court's remand of this case, it elects to defer to the state court any ruling on Defendants' Motion to Realign Ernest Addo and Plaintiffs' Motion for Leave to File Plaintiff's Second Amended Complaint. This action is remanded to the Court of Common Pleas for Richland County, South Carolina.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

January 20, 2015
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge